IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:13-CV-00176-FL

| | |
|---|---|
| ELIZABETH H. MCKINNY, )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>DAVID R. ALLISON, )<br>)<br>Appellee. )<br>)<br>)<br>IN RE: )<br>    DAVID R. ALLISON, )<br>)<br>    Debtor. )<br>    Case No. 11-04728-8-SWH )  | ORDER |

This matter comes before the court on appeal by creditor-plaintiff Elizabeth McKinny ("appellant") from an order of the United States Bankruptcy Court for the Eastern District of North Carolina ("bankruptcy court") entered August 29, 2012, denying her motion for summary judgment in an adversary proceeding brought against debtor-defendant David Allison ("appellee") in his Chapter 11 bankruptcy action. The matter is fully briefed and the issues presented are ripe for ruling.

## BACKGROUND

The bankruptcy court provides a full recitation of the facts, which the court summarizes as follows. In August 2005, appellee approached appellant regarding an investment opportunity in Venture Capital in Motion ("VCIM") and allegedly made certain representations regarding VCIM and the investment. It appears from the record that allegedly appellee was an "approved investor"

with VCIM and that appellant's investment would be forwarded to VCIM to purchase and sell irrevocable bank guarantees. In response, in November 2005, appellant sent appellee $500,000 to invest in VCIM. On November 21, 2005, appellee executed and delivered a promissory note evidencing the investment, payable to appellant in the principal amount with interest on November 21, 2006. The investment opportunity failed and appellant's funds were lost. Subsequently, appellee defaulted on the promissory note.

On April 9, 2009, appellant initiated an action against appellee in the United States District Court for the District of Colorado ("Colorado District Court"), entitled <u>Elizabeth McKinny v. David R. Allison</u>, No. 09-CV-00817-PAB-KLM ("underlying action"). In the complaint, appellant asserted claims against appellee for breach of the promissory note, common law fraud, and securities fraud, alleging violation of 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

On November 2, 2009, the parties entered into a Settlement Agreement and Mutual Release in connection with the underlying action ("Settlement"). Under the terms of the Settlement, appellee agreed to make six installment payments to appellant totaling $650,000. Paragraph III, C of the Settlement stipulated as follows:

> By entering into this Agreement, the Parties admit no wrongdoing or liability as a result of any act or failure to act, whether singularly or collectively, and the consideration for the settlement delivered and paid by a Party to any other Party shall not be deemed an admission of any wrongdoing or liability by the paying Party.

In addition, the Settlement provided for the preparation of a stipulated judgment in the amount of appellant's asserted damages in the underlying action, which could be recorded in the event appellee

defaulted on the Settlement. Finally, paragraph III, E provided that if appellee filed a petition for bankruptcy, and the bankruptcy court avoided any portion of the Settlement, then the Settlement would be void *ab initio* in the bankruptcy proceeding, reviving all claims against appellee and entitling appellant to assert any rights and claims she had before the effective date of the Settlement.

On March 11, 2010, the parties amended the Settlement after appellee was unable to make payments pursuant to the original Settlement. However, appellee defaulted on the amended settlement, and on February 15, 2011, the Colorado District Court entered the stipulated judgment in favor of appellant in the amount of $849,212.08 plus interest. The order granting appellant's motion for entry of the stipulated judgment referenced the Settlement but was silent as to appellee's liability for securities law violations or fraud. The stipulated judgment also was silent as to liability.

On June 17, 2011, appellee filed a voluntary petition under Chapter 11 of the bankruptcy code, which is currently pending as In Re: David Allison, No. 11-04728-8-SWH, in the Eastern District of North Carolina. On September 21, 2011, appellant initiated the underlying adversary proceeding, asserting the stipulated judgment against appellee is not dischargeable in bankruptcy because the debt is governed by the exceptions to discharge set forth in 11 U.S.C. § 523(a)(2) and (19).[1]

On April 30, 2012, appellant filed a motion for summary judgment in the adversary proceeding. On August 29, 2012, the bankruptcy court denied the motion, finding genuine dispute existed regarding a material fact — whether the exception to discharge contained in § 523(a)(19),

---

[1]All future references to § 523(a) are to Title 11 U.S.C.

3

for debt due to a violation of securities law or fraud, was satisfied. The bankruptcy court reasoned that the Settlement and stipulated judgment do not contain a finding of fact regarding a securities law violation.

On September 11, 2012, appellant filed a notice of appeal of the bankruptcy court's order denying the motion for summary judgment. (DE 1). On March 26, 2013, appellant filed a brief in support of appeal, which is accompanied by various exhibits. (DE 10). On April 19, 2013, appellee filed a brief in opposition. (DE 13). Appellant contends the bankruptcy court erred for several reasons: (1) § 523(a)(19) does not require a specific finding of fact or law related to securities law violation or fraud in an underlying judgment, only that the allegations of violation in the underlying complaint result in a settlement agreement or judgment; (2) the stipulated judgment is an admission of appellee's liability for each of the claims in the underlying action, including the claim for securities law violations, for the purpose of a non-dischargeability action under § 523(a)(19); and (3) the bankruptcy court was required to accept the non-bankruptcy court's determination of liability.

## DISCUSSION

A.    Standard of Review

This court has jurisdiction to hear appellant's appeal from the bankruptcy court's order denying the motion for summary judgment, as an interlocutory order of the bankruptcy court. See 28 U.S.C. § 158(a). "On an appeal [from the bankruptcy court] the district court . . . may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. The court reviews "legal conclusions by the bankruptcy court de novo and may overturn its factual determinations only upon a showing of clear

error." Morris v. Quigley (In re Quigley), 673 F.3d 269, 271 (4th Cir. 2012). "Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. 8009.

B.   Analysis

Section 523(a)(19) provides that a debt is non-dischargeable if two conditions are met:

> (A)(i) [The debt is for] the violation of any of the Federal securities laws . . . , any of the State securities laws, or any regulation or order issued under such Federal or State securities laws; or (ii) common law fraud, deceit, or manipulation in connection with the purchase or sale of any security; and
>
> (B) [the debt] results, before, on, or after the date on which the petition was filed, from — (i) any judgment, order, consent order, or decree entered in any Federal or State judicial or administrative proceeding; (ii) any settlement agreement entered into by the debtor; or (iii) any court or administrative order for any damages, fine, penalty, citation, restitutionary payment, disgorgement payment, attorney fee, cost, or other payment owed by the debtor.

§ 523(a)(19)(A)-(B).

In order for a debt to be non-dischargeable under this section, both prongs must be satisfied: (1) there was a violation of securities law or fraud in connection with the sale of a security; and (2) the violation resulted in debt that was memorialized in a judgment, settlement, or decree. § 523(a)(19).

1.   Violation of Securities Law

One issue raised by appellant is whether the stipulated judgment itself independently proves appellee committed fraud or violated a securities law. Appellant argues that § 523(a)(19) does not require a specific finding of fact or law related to fraud or securities law violation in an underlying judgment, only that the allegation of fraud or securities law violation resulted in a judgment.

5

(Appellant's Br. 7). Appellant suggests an actual violation is not required to satisfy the requirements of § 523(a)(19) and that allegations of a violation in a non-bankruptcy court complaint would suffice, so long as they result in a judgment.

The court's "interpretation of the Bankruptcy Code starts where all such inquiries must begin: with the language of the statute itself." Ransom v. FIA Card Servs., 131 S.Ct. 716, 723 (2011) (quotation omitted). "[W]hen the statute's language is plain, the sole function of the courts – at least where the disposition required by the text is not absurd – is to enforce it according to its terms." Lamie v. U.S. Trustee, 540 U.S. 526, 534 (2004).

The court has a duty pursuant to the canon of statutory construction that effect must be given, "if possible, to every clause and word of a statute." Montclair v. Ramsdell, 107 U.S. 147, 152 (1883). The two conditions of § 523(a)(19) are separated by a semicolon and the conjunction "and," which makes it clear that each condition independently must be satisfied. Such an interpretation is most consistent with canons of statutory construction. The word "violation" would be rendered meaningless if the court adopted appellant's interpretation of the statute. Therefore, the court interprets the statute as requiring an actual violation of securities law or fraud, not merely allegations of a securities violation or fraud in an underlying complaint that are memorialized in a settlement agreement or stipulated judgment.

Furthermore, legislative history of § 523(a)(19) supports this statutory construction. "[I]t is now settled that available extrinsic interpretative aids may not be disregarded even though the statutory language appears to have a 'plain meaning' which does not lead to an absurd result." State Water Control Bd. v. Train, 559 F.2d 921, 924 n.20 (4th Cir. 1977) (citing United States v. Amer. Trucking Ass'ns, 310 U.S. 534, 543-44 (1940) ("When aid to construction of the meaning of words,

as used in the statute, is available, there certainly can be no 'rule of law' which forbids its use, however clear the words may appear on 'superficial examination.'").

Section 523(a)(19) was added to the bankruptcy code by § 803 of the Corporate and Criminal Fraud Accountability Act of 2002,[2] Pub. L. No. 107-204, 116 Stat. 745, ("Act"). The Senate Committee on the Judiciary Report ("Report") on the Act stated the purpose of the Act, among other things, was "to disallow debts incurred in violation of securities fraud laws from being discharged in bankruptcy." S. REP. NO. 107-146, at 2 (2002). The Report's section-by-section analysis and discussion indicated § 523(a)(19)

> would amend the federal bankruptcy code to make judgments and settlements arising from state and federal securities law violations brought by state or federal regulators and private individuals non-dischargeable. Current bankruptcy law may permit *wrongdoers* to discharge their obligations under court judgments or settlements based on securities fraud and securities law violations.

Id. at 12 (emphasis added). Senator Patrick Leahy, introducer and author of the Act, submitted a separate section-by-section analysis and discussion of the Act wherein it is indicated that § 523(a)(19) is meant to "prevent *wrongdoers* from using the bankruptcy laws as a shield and to allow defrauded investors to recover as much as possible." 148 CONG. REC. S7418 (daily ed. July 26, 2002) (emphasis added). The legislative history supports the conclusion that § 523(a)(19) is aimed at wrongdoers and requires culpability for violation of securities law.

Even appellant admits § 523(a)(19) requires fraud or violation of securities law. Specifically, she states, "the securities law *violation* [must] result in a settlement agreement or judgment" and that "a plaintiff *must establish a violation* of state securities laws or common-law fraud occurred in connection with a purchase or sale of a security." (Appellant's Br. 7) (emphasis added).

---

[2]The Corporate and Criminal Fraud Accountability Act of 2002 is Title VIII of the Sarbanes-Oxley Act of 2002.

2.   Effect of Stipulated Judgment

Next, appellant argues a stipulated judgment is an admission of liability for each of the claims in the underlying complaint as a matter of law, regardless of the content of the stipulated judgment. (Appellant's Am. Mot. for Leave to Appeal 4). Neither the Fourth Circuit nor the Supreme Court have ruled on the specific question of whether a stipulated judgment or settlement agreement that is silent with respect to liability for violation of securities law is sufficient as a matter of law to satisfy non-dischargeability requirements of § 523(a)(19) at the summary judgment stage. The Supreme Court has held a bankruptcy court should evaluate extrinsic evidence to make the ultimate decision in an adversary proceeding involving similar non-dischargeability statutes. See Brown v. Felson, 422 U.S. 127, 138-39 (1979); Archer v. Warner, 538 U.S. 314, 318-23 (2003).

In Brown, 422 U.S. at 129 n.1, the Supreme Court was presented with a case involving a "substantially similar" statutory provision to § 523(a).[3] The parties in that case had entered into a stipulation to settle a lawsuit alleging that money had been obtained through fraud. Id. at 128. "Neither the stipulation nor the resulting judgment indicated the cause of action on which [debtor] respondent's liability to [creditor] was based." Id. As a result, there was no finding of fraud in either document.

Thereafter, the debtor filed a voluntary petition for bankruptcy and sought to have the debt discharged. The debtor argued res judicata precluded the creditor from re-litigating "the nature of [debtor] respondent's debt to [creditor] petitioner." Id. at 129. The Supreme Court disagreed and

---

[3]As noted in Brown, "[i]n 1978, Congress repealed the Bankruptcy Act, effective October 1, 1979. A case commenced under the Bankruptcy Act continues to be governed by it. Discharge provisions substantially similar to § 17 of the Bankruptcy Act appear in § 523 of the new law." 422 U.S. at 129 n.1 (citations omitted). In Brown, the Court addressed statutory provisions similar to § 523(a)(2) and (4). See id. at 129.

8

held "that the bankruptcy court is not confined to a review of the judgment and record in the prior state-court proceedings when considering the dischargeability of [debtor] respondent's debt." Id. at 138-39. The Court determined the bankruptcy court could consider extrinsic evidence on the question of whether fraud existed to bar the debt's discharge. See id. at 132. "[T]he mere fact that a conscientious creditor has previously reduced his claim to judgment should not bar further inquiry into the true nature of the debt." Id. at 138.

The holding of Brown was extended to instances where parties settle a state court action based upon fraud (among other violations). See Archer, 538 U.S. at 316-17. The Court considered whether a debt embodied in a settlement agreement and releases that were silent as to liability could nevertheless be non-dischargeable pursuant to § 523(a)(2)(A).[4] Id. at 316. The settlement agreement and releases indicated they were not an admission of liability or wrongdoing and that they were "the compromise of disputed claims, and that payment [was] not to be construed as an admission of liability." Id. at 317 (quotation omitted). The Supreme Court concluded that the settlement agreement

> left only one relevant debt: a debt for money promised in the settlement agreement itself. To recognize that fact, however, does not end our inquiry. We must decide whether that same debt can *also* amount to a debt for *money obtained by fraud*, within the terms of the nondischargeability statute. Given this Court's precedent, we believe that it can.

Id. at 319. The Court relied on the reasoning of Brown in holding that the existence of a settlement agreement and releases does not bar the creditors from producing extrinsic evidence that "the

---

[4] § 523(a)(2)(A) provides that a debt shall not be discharged in bankruptcy to the extent that it is "for money . . . obtained by false pretenses, a false representation, or actual fraud."

9

settlement debt arose out of . . . fraud." Id. at 323 (quotation omitted).

This Supreme Court case law provides relevant principles applicable to discharge questions under § 523(a)(19) and suggests the bankruptcy court must independently ensure the debt is for violation of securities law. See id. at 319; Brown, 422 U.S. at 138. If the bankruptcy court cannot make this determination from the available factual record, including the underlying non-bankruptcy court pleadings, then it follows that the bankruptcy court cannot rule affirmatively on a party's motion for summary judgment. The bankruptcy court will need to decide the issue of whether the debt is for violation of securities law after further proceedings.

Two bankruptcy courts in the Fourth Circuit have ruled on cases involving § 523(a)(19) and the effect of a consent judgment or default judgment. See Gilley v. SEC (In re Gilley), No. 12-2066, 2013 WL 4460499, at *1-3 (Bankr. M.D.N.C. Aug. 19, 2013); Voss v. Pudjak (In re Pujdak), 462 B.R. 560, 564-678 (Bankr. D.S.C. June 30, 2011). However, these cases do not provide guidance for the narrow issue presented in the instant case of whether a settlement agreement or stipulated judgment that is silent with respect to liability is sufficient evidence as a matter of law to satisfy § 523(a)(19)(B).

Gilley involved a debtor who consented in a non-bankruptcy court to entry of judgment that found him liable for disgorgement of debt resulting from "conduct alleged in the [underlying] Complaint." 2013 WL 4460499, at *3 (quotation omitted). The underlying complaint only alleged debtor violated securities laws. Therefore, at summary judgment, the bankruptcy court did not need to look any "further than the plain terms of the . . . [consent judgment] itself to conclude that the debt is for a violation of securities laws and nondischargeable under section 523(a)(19)."

A non-bankruptcy court entered default judgment against the debtors in Pujdak. 462 B.R.

at 546-66. The default judgment held that the debtors, being in default, were liable for all alleged violations in the complaint, including violation of state securities law. Id. at 566. In ruling on the creditor's motion for judgment on the pleadings, the bankruptcy court found that in the underlying complaint, the creditor "sufficiently alleged the requirements for a cause of action under" the statute governing civil liability for violation of state securities law. Id. at 581. "The effect of the default judgment deems these allegations true; thus, the requirement set forth in Subsection A of § 523(a)(19) [regarding violation of securities law] is fulfilled." Id.

Several bankruptcy courts in other circuits have ruled in cases involving settlement agreements or stipulated judgments with similarities to those in the instant case. See, e.g., Barton v. Stalter (In re Stalter), No. 11-06058, 2012 WL 4482058, at *3-5 (Bankr. E.D. Mich. Sept. 25, 2012); Mollasgo v. Tills (In re Tills), 419 B.R. 444, 456-57 (Bankr. S.D. Cal. 2009); Allen v. Loughery (In re Loughery), No. 09-6380, 2010 WL 4642131, at *2-3 (Bankr. N.D. Ga. Oct. 12, 2010); Hodges v. Buzzeo (In re Buzzeo), 365 B.R. 578, 582-86 (Bankr. W.D. Pa. 2007); Peterman v. Whitcomb (In re Whitcomb), 303 B.R. 806, 809-10 (N.D. Ill. 2004).

Tills involved a debtor who entered into a settlement agreement that did not concede fault or liability for violation of state securities law. 419 B.R. at 447. The underlying complaint filed in non-bankruptcy court alleged a claim based on multiple grounds. Id. The court acknowledged a settlement agreement in appropriate cases can independently establish that debtor violated securities law. Id. at 452-453. The bankruptcy court determined that when the settlement agreement contains an express statement that fault and liability are not conceded, the settlement agreement is insufficient, standing alone, to satisfy § 523(a)(19)(A). Id. The court denied creditor's motion for summary judgment because it found there was "a triable issue of material fact as to whether

securities violations exist in this case." Id. at 457.

Stalter involved a similar set of facts as Tills. There, the debtor was a party to a consent judgment and settlement agreement in the non-bankruptcy court. Stalter, 2012 WL 4482058, at *2. The underlying complaint alleged a claim based on multiple grounds, including violation of state securities law. Id. at 2. The consent judgment was subject to the terms of the settlement agreement, which "reserved any admission of liability." Id. The creditors claimed that because the underlying complaint included a count for violation of state securities law "and there was a consent judgment in that case, the debt is per se non-dischargeable in this bankruptcy case." Id. at 3. The bankruptcy court relied on the holding of Tills, 419 B.R. at 457, and denied the creditor's motion for summary judgment, holding that "the existence of so many alternate theories of liability in the state court complaint militates against a conclusion that the Settlement Agreement can be said to be based on any one of them. There are thus triable issues of material fact as to whether there were securities violations." Id. at 5.

In Loughery the creditor filed a complaint in a federal district court, alleging violations of federal and state securities laws. 2010 WL 4642131, at *1. The parties settled and creditor obtained a consent judgment against debtor. Id. The settlement agreement did not contain an admission of liability for securities violations. Id. The bankruptcy court held that "even though the Settlement Agreement satisfies the requirement of § 523(a)(19)(B), the terms of the Settlement Agreement itself do not establish as a matter of law that the debt results from the violation of the securities laws." Id. at *3. As a result, the bankruptcy court denied the creditor's motion for judgment on the pleadings.

Buzzeo involved a settlement agreement and stipulated judgment. 365 B.R. at 580-581. The

stipulated judgment expressly stated the judgment debt against the husband-debtor would be non-dischargeable pursuant to § 523(a)(2) in a bankruptcy proceeding. Id. at 580. In addition, the husband-debtor was barred from re-litigating the issues asserted in a claim for violation of state securities law in the underlying complaint. Id. at 581. The court granted the creditor's motion for summary judgment with respect to the husband-debtor. Id. at 583. However, the court denied the creditor's motion for summary judgment with respect to the wife-debtor. Id. at 585. Even though the wife was a party to the settlement agreement, she was not a party to the non-bankruptcy litigation. Id. at 584. The wife did not admit any wrongdoing in the settlement agreement, and the stipulated judgment was not entered against her. Id. The bankruptcy court determined these facts were insufficient to "enable the Court to conclude that . . . [the wife's] obligation to the . . . [creditors] is a debt for violation of securities law." Id. at 585. The settlement agreement was only proof that the wife agreed to be liable for the obligation to pay the monetary judgment in the settlement agreement. Id. at 584.

    Whitcomb is the only case of which the court is aware, in which a bankruptcy court granted the creditor's dispositive motion without establishing violation of securities law. 303 B.R. at 810-11. The bankruptcy court in Whitcomb granted the creditor's motion for judgment on the pleadings with respect to § 523(a)(19). Id. In the non-bankruptcy court, the creditor's complaint alleged grounds for relief based on securities fraud, among other things. Id. at 807. The settlement agreement and agreed judgment order in the underlying action "provided that the Debtor agreed that he damaged the . . . [creditors] and was indebted to them" for a certain amount. Id. at 807-08. The court did not provide additional details about the terms of the settlement agreement or agreed judgment. Id. The debtor did not respond to the creditors' motion. Id. at 810. The court granted

the creditors' motion, finding the pleadings, including the settlement agreement and agreed judgment order, contained undisputed facts that entitled the creditors to judgment as a matter of law. Id. at 810. The court determined both elements of § 523(a)(19) were satisfied even though the settlement agreement was silent as to liability for securities fraud. See id.

Here, neither the settlement agreement nor the stipulated judgment included a statement regarding liability. The underlying complaint alleged multiple grounds for relief. The bankruptcy court could not have determined whether the settlement agreement or stipulated judgment was based on the violation of securities law from the factual record that was before it on summary judgment. Parties often settle lawsuits, and the decision to settle is a strategic one that parties may undertake because it is deemed more cost-effective than further litigation proceedings. Without more information, the bankruptcy court could not have ruled as a matter of law on summary judgment that the settlement agreement or stipulated judgment established that the debt was for the violation of securities law.

3. Preclusive Effect of Non-bankruptcy Court's Liability Determination

Finally, appellant argues the bankruptcy court was required to accept the non-bankruptcy court's liability determination. (App's Amended Motion for Leave to Appeal 3). The bankruptcy court agrees, but appellant argues the court wrongfully added a new requirement that the underlying judgment contain a specific finding of liability for securities law violation. (App's Brief 9-10).

There is a dearth of circuit court decisions regarding the extent to which bankruptcy courts should give preclusive effect to liability determinations of non-bankruptcy courts. See Meyer v. Rigdon, 36 F.3d 1375, 1378-80 (7th Cir. 1994); Pudjak, 462 B.R. at 576-79; Tills, 419 B.R. at 455-56.

Traditional collateral estoppel, also known as issue preclusion, requires that issues be "actually litigated and necessary to the outcome of the first action" to be given preclusive effect in subsequent litigation. Parklane Hosiery Co., Inc. v. Shore, 439 U.S. 322, 326 n.5 (1979) (citations omitted). Therefore, a default judgment normally is not given preclusive effect because no issue is "actually litigated." Meyer, 36 F.3d at 1379. Meyer interpreted § 523(a)(11) as preempting traditional collateral estoppel and precluding assertion of issues in bankruptcy court that were not actually litigated in an underlying default judgment. 36 F.3d at 1380. However, Meyer still recognized the requirement of actual wrongdoing under § 523(a)(11). See id. at 1382. Specifically, the court determined that,

> [u]nder the plain language of [§ 523(a)(11)], *any* final judgment, including default judgments, must be given preclusive effect so long as they arise from the debtor's fraud . . . . Accordingly, the only issue left for us to consider is whether the default judgment entered against [debtor] arose from any act of fraud.

Id. (quotations omitted). The court then examined the underlying complaint to determine whether the elements of § 523(a)(11) were sufficiently pleaded to be given preclusive effect. Id. at 1382.

Some bankruptcy courts have discussed the interpretation of § 523(a)(11) from Meyer, 36 F.3d at 1380, in the context of § 523(a)(19). See Pudjak, 462 B.R. at 576-9 (finding elements of § 523(a)(19) were sufficiently pleaded in complaint to be given preclusive effective in underlying default judgment); Tills, 419 B.R. at 456 (finding preclusive effect should not be given to issue of liability because the issue failed to be "necessarily decided" where it was reserved in a settlement agreement).

The court is aware of no courts that have applied the interpretation of Meyer, 36 F.3d at 1380, to consent or stipulated judgments however. Meyer acknowledged the distinction between default judgments and consent judgments and how that informs the application of collateral estoppel:

> Consent decrees, while settling the issue definitively between the parties, normally do not support an invocation of collateral estoppel. The rationale behind this general rule is that issues underlying a consent judgment generally are neither actually litigated nor essential to the judgment. Collateral estoppel may only be applied to consent decrees if the parties could have reasonably foreseen the conclusive effect of their actions.

See id. at 1379 (quotations omitted). "[I]ssue preclusion ordinarily does not attach unless it is clearly shown that the parties intended that the issue be foreclosed in other litigation." 18A CHARLES ALAN WRIGHT ET AL., FEDERAL PRACTICE & PROCEDURE § 4443 (2d ed.) (2002).

The bankruptcy court could not have determined the intention of the parties with respect to the conclusive effects of the stipulated judgment. The stipulated judgment did not reference any of the underlying asserted claims; it only referenced the settlement agreement, which expressly stated the parties admitted no liability. Therefore, the bankruptcy court would need to conduct further proceedings to determine whether the parties intended to foreclose subsequent assertion of the issue of liability by entering the stipulated judgment. Thus, the bankruptcy court properly denied appellant's motion for summary judgment.

## CONCLUSION

Based upon the foregoing, the bankruptcy court's decision denying appellant's motion for summary judgment is AFFIRMED. The clerk is directed to REMAND the case to the bankruptcy court for further proceedings in accordance with this order.

SO ORDERED, this the 29th day of October, 2013.

_____
LOUISE W. FLANAGAN
United States District Judge